J-A24024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VC RTL HOLDINGS, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JBKK ENTERPRISES, LLC AND C/O | : | |
| KEVIN KRONBERG, MANAGING | : | |
| MEMBER | : | No. 389 EDA 2022 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered January 5, 2022
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  2020-05082

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED FEBRUARY 7, 2023**

JBKK Enterprises, LLC ("JBKK") and c/o Kevin Kronberg, managing Member, (collectively "Appellants") appeal from the order granting summary judgment in favor of VC RTL Holdings, LLC ("VC") in a mortgage foreclosure action in the amount of $351,850.04. Appellants argue that the trial court erred in granting summary judgment because there are various issues of material fact; the rule articulated in **Borough of Nanty-Glo v. Am. Surety Co. of New York**, 163 A. 523 (Pa. 1932), precluded the entry of summary judgment; and the trial court should have allowed more time for discovery. We affirm.

On January 31, 2019, JBKK borrowed $316,857 from WCP Fund I LLC ("WCPF"). In support of the loan, JBKK executed and delivered to WCPF a

promissory note for $316,857. The note provided for the accrual of interest on the principal balance at a rate of 10% per annum, a one-year term, and a maturity date of February 1, 2020. The note required regular monthly payments of $2,640.48, and a final payment of all outstanding costs and the remaining principal balance on February 1, 2020. The note further provided that late charges would be equal to both 10% of each payment not received within five days of the due date, and a 24% per annum default interest rate. Moreover, JBKK executed and delivered to WCPF a commercial "Mortgage, Assignment of Rents and Security Agreement" for $316,857, against its real property located in Perkasie, Pennsylvania (Bucks County Tax Parcel Number 15-028-144). As an additional security, Kronberg, JBKK's managing member, executed and delivered to WCPF a guaranty in the original principal amount of $316,857.

By allonge dated January 31, 2019, WCPF assigned the note and loan to PS Funding Inc. Thereafter, WCPF assigned the mortgage to PS Funding. By a second allonge dated February 15, 2019, PS Funding assigned the note and loan to VC. PS Funding separately assigned the mortgage to VC, which was recorded on June 25, 2020.

JBKK failed to make payments on the loan in January 2020, which resulted in the default interest rate taking effect on February 1, 2020, and regular monthly payments increasing to $6,337.14. On May 5, 2020, VC

served Appellants with combined Act 6 and Act 91 Notices.[1] As of June 30, 2020, Appellants owed $351,850.04 under the note, mortgage, and guaranty.

On October 1, 2020, VC filed a complaint in mortgage foreclosure for $351,850.04. After reinstating and serving Appellants with the complaint, Appellants filed their answer and new matter. VC filed a reply to Appellants' new matter. Thereafter, on August 19, 2021, VC filed a motion for summary judgment, to which VC attached, *inter alia*, an affidavit by Brett Peiffer, PS Funding's asset manager and a servicing agent for VC. Appellants filed a response to the motion for summary judgment. On January 5, 2022, the trial court granted VC's motion for summary judgment, and entered judgment in favor of VC in the amount of $351,850.04. Appellants timely appealed.

Appellants raise the following questions for our review:

Did the trial court abuse its discretion or err as a matter of law, *inter alia*, for the following reasons:

A. Granting the Motion for Summary Judgment despite the presentation of genuine issues of material fact as to necessary elements of the cause of action or defenses thereto;

_____

[1] Loan Interest and Protection Law, 41 P.S. § 403 (Act 6), and Housing Finance Agency Law, 35 P.S. §§ 1680.402c, 1680.403c (Act 91). "Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices." ***JP Morgan Chase Bank N.A. v. Taggart***, 203 A.3d 187, 194 (Pa. 2019) (citation omitted). "Act 6 provides safeguards to residential borrowers before they face foreclosure." ***Id.*** The purpose of Act 91 notice is "to instruct the mortgagor of different means [they] may use to resolve [their] arrearages in order to avoid foreclosure on [their] property and also [to give] a timetable in which such means must be accomplished." ***Wells Fargo Bank, N.A. v. Monroe***, 966 A.2d 1140, 1142 (Pa. Super. 2009) (citation omitted).

B. Granting [VC's] Motion for Summary Judgment despite the fact that discovery had not been completed which would allow Appellants to produce evidence of facts essential to the cause of action or defenses which in a jury trial would require the issues to be submitted to a jury;

C. Failing to consider the genuine issues of material facts presented in the Appellants' Answer and New Matter, including but not limited to (1) the proper assignment of the Mortgage and Loan documents; (2) the granting of a waiver, extension or forbearance by [VC] and/or its agents; (3) the issue of promissory estoppel; and (4) [VC's] failure to provide any proof that the Act 6 and Act 91 Notices were sent and delivered to Appellants as required by law;

D. Failing to allow time for the taking of discovery as to the material issues of fact and deciding the Motion only on the contested pleadings;

E. Treating Appellants' denials in its Answer and New Matter as admissions of fact;

F. Allowing [VC] to rely on allegations which are nothing more than conclusions of law, despite Appellants' denial of such, requiring no further answer under the Rules of Civil Procedure;

G. Treating Appellants' specific denials of [VC's] conclusory allegations as admissions of fact;

H. Allowing [VC] to rely solely on testimonial affidavits to establish the absence of a genuine issue of material fact.

I. Allowing [VC] to rely solely on a testimonial affidavit of an individual not identified as an agent, servant, workman or employee of the named [VC] regarding Appellants' alleged default;

J. Allowing [VC] to rely solely on a testimonial affidavit without any documents to support the allegations concerning any claims of Appellants' alleged default;

K. Allowing [VC] to rely solely on a testimonial affidavit of an entity not a party to the transaction without explanation as to

why an authorized representative of the named [VC] did not make the affidavit;

L. Allowing [VC] to rely solely on a testimonial affidavit of an unrelated third party to the transaction without any explanation for the basis of knowledge or information that he claimed to have about Appellants' account and relationship with [VC];

M. Granting the Motion without a proper affidavit, relying solely on a testimonial affidavit and without any evidentiary record which would entitle [VC] to prevail;

N. Gra[n]ting the Motion despite the lack of any evidence concerning the history and appropriateness of the assignments of the Loan Documents; and

O. Granting the Motion without any proof that the Act 6 and Act 91 Notices required by law were correctly sent and/or delivered to Appellants.

Appellants' Brief at 8-10 (citation omitted).

Our standard of review of a trial court's order granting summary judgment is as follows:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out

- 5 -

a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citation and brackets omitted).

Although Appellants raise 15 separate questions in their Statement of Questions, their argument section only contains 5 argument headings, which can be summarized into three main claims of error: (1) their general denials in their answer to VC's complaint did not constitute admissions and there were issues of genuine material fact precluding the entry of summary judgment; (2) testimonial affidavits cannot form the basis of summary judgment, as articulated in *Nanty-Glo*; and (3) the parties were not provided sufficient time to complete discovery.

First, Appellants argue that their denials in their answer to VC's complaint should not be deemed admissions and they raised genuine issues of material fact regarding affirmative defenses. *See* Appellants' Brief at 17-20. Specifically, Appellants claim that they admitted to the existence of loan documents, but denied the substance of those documents, and that VC's averments of breach were conclusions of law, and Appellants' denial should not be considered an admission. *See id.* at 18-19. Appellants contend that they asserted affirmative defenses of waiver and estoppel based on VC's agent's representations of an extension, and their continued payments based upon that representation. *See id.* at 20. Appellants also argue that there are

genuine issues of material fact regarding the assignments of loan documents and whether VC is the proper party in this case. *See id.* at 21-22. To that end, Appellants suggest that there was a convoluted history of assignments, and they believe it is unclear whether the assignments were effective. *See id.* at 22. Appellants assert that VC did not establish that WCFP could execute and assign the loan and note on the same day. *See id.*

Further, Appellants argue that they did not receive proper notice of the Act 9 or Act 61 notices, and that the notices were defective. *See id.* at 22. Appellants maintain that because there is a genuine issue of material fact as to whether they received the notices, this issue must be resolved in their favor. *See id.* Finally, Appellants claim that there is a genuine issue of fact regarding Peiffer's ability to execute the affidavit in support of VC's motion for summary judgment. *See id.* at 24. Appellants note that Peiffer is a manager at PS Fundings, and there is no evidence to suggest that he had authority to provide an affidavit on VC's behalf. *See id.* at 24-25, 26. Appellants additionally highlight that Peiffer failed to establish his personal knowledge of the matter. *See id.* at 25.

> The holder of a mortgage has the right, upon default, to bring a foreclosure action. The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount.

*Bank of America, N.A. v. Gibson*, 102 A.3d 462, 465 (Pa. Super. 2014) (citation omitted). "In a mortgage foreclosure action, the mortgagee is the

real party in interest." ***CitiMortgage, Inc. v. Barbezat***, 131 A.3d 65, 68 (Pa. Super. 2016). "A person foreclosing on a mortgage, however, also must own or hold the note. This is so because a mortgage is only the security instrument that ensures repayment of the indebtedness under a note to real property." ***Id.***; ***see also*** Pa.R.C.P. 1147.

Moreover, in a mortgage foreclosure action, general denials to averments in a complaint constitute admissions. ***See*** Pa.R.C.P. 1029(b); ***see also Bayview Loan Servicing, LLC v. Wicker***, 163 A.3d 1039, 1044 (Pa. Super. 2017) (holding that a general denial of an averment of a mortgage default constitutes an admission). This is because the mortgagors and mortgagee are the only parties with sufficient knowledge upon which to base a specific denial. ***See U.S. Bank, N.A. v. Pautenis***, 118 A.3d 386, 396 (Pa. Super. 2015).

In its complaint, VC alleged that JBKK entered into a loan agreement with WCPF on January 31, 2019, providing for a commercial loan of $316,857; JBKK executed and delivered to WCPF a promissory note for $316,857; JBKK executed and delivered to WCPF a commercial "Mortgage, Assignment of Rents and Security Agreement" for $316,857, against its real property located in Perkasie, Pennsylvania; and as an additional security Kronberg, JBKK's managing member, executed and delivered to WCPF a guaranty in the original principal amount of $316,857. ***See*** Complaint 10/1/20, at ¶¶ 3, 5, 6. Further, VC averred that the note, loan, and mortgage were first assigned to PS

Funding and then to VC, and that the mortgage assignment was recorded on June 25, 2020. *See id.* at ¶¶ 7-8. VC alleged that JBKK was in default of the loan for failing to make the required monthly payments in January 2020, and that $351,850.04 was due under the note, mortgage, and guaranty. *See id.* at ¶¶ 9-10. VC further noted that it provided Act 6 and Act 91 notices to Appellants. *See id.* at ¶¶ 11-14. VC attached the relevant documents to the complaint, including the loan agreement, note, mortgage, guaranty, allonges, mortgage assignments, and the Acts 6 and 91 notices.

In their answer, Appellants generally denied VC's averments related to the loan agreement, note, mortgage, guaranty, allonges, and mortgage assignments. *See* Answer, 7/6/21, at ¶¶ 3-8. Further, Appellants generally denied they were in default and instead averred that they were in communication with an unidentified loan officer about an extension on the loan and attempted to make "two regular monthly payments on the Loan," which were rejected. *See id.* at ¶¶ 9-10. Appellants also generally denied that it received the Act 6 and Act 91 notices, averring the addresses to which the notices were sent were not correct. *See id.* at ¶ 13-14.

Here, Appellants' general denials are insufficient to establish a material issue of fact. *See Wicker*, 163 A.3d at 1044. Indeed, Appellants possessed sufficient knowledge to specifically admit or deny VC's allegations in the complaint, including the failure to make payments and the calculation of the amount due. *See Pautenis*, 118 A.3d at 396; *see also First Wisconsin Tr.*

*Co. v. Strausser*, 653 A.2d 688, 692 (Pa. Super. 1995) (noting that general denials "as to the principal and interest owing must be considered an admission of those facts"). Moreover, Appellant's bald allegation regarding a purported extension on the loan or their attempt to make two payments is not supported by any documentation. **See** Pa.R.C.P. 1035.3(a) (stating that adverse party to motion for summary judgment may not rest upon the denials of the pleadings but must file a response identifying any issues of fact controverting the evidence cited in support of the motion or evidence in the record establishing the facts essential to the defense).

Likewise, the uncontroverted evidence establishes that VC had standing to bring the mortgage foreclosure action, as it owned the mortgage and possessed the note. **See Gerber**, 142 A.3d at 863 (holding that given appellee's "ownership of the mortgage and possession of the [n]ote, we find he has standing as a real party in interest to pursue the underlying foreclosure action."). Notably, the assigned mortgage to VC was recorded in the Bucks County Recorder of Deeds on June 25, 2020. Appellants have offered no evidence regarding the possession of the note or ownership of the mortgage establishing a genuine issue of material fact. **See Barbezat**, 131 A.3d at 69 (holding that "the chain of possession by which a party comes to hold the note is immaterial to its enforceability by the party." (citation and brackets omitted)). Therefore, we conclude that Appellants failed to deny VC's allegations of default with any specificity, which constituted admissions, and

there is no evidence contravening the amounts VC alleged are due and owing by Appellants.

Appellants' claims regarding the Act 6 and Act 91 notices do not create an issue of material fact. Preliminarily, Appellants have not established that either act is applicable to this case, as they have not demonstrated or argued that the mortgage was a residential mortgage, as required by Act 6, or that the property securing the mortgage was their principal residence, as required by Act 91. **See** 35 P.S. § 1680.401c(a) (providing that Act 91 does not apply if "[t]he property securing the mortgage is not the principal residence of the mortgagor"); **Johnson v. Phelan Hallinan & Schmieg, LLP**, 235 A.3d 1092, 1094 (Pa. 2020) (stating that Act 6 "governs residential mortgages within the Commonwealth."). In any event, VC attached to its complaint and reply to Appellants' new matter a signed return receipt by Kronberg which evidences that he received the notices. Appellants do not dispute this evidence in their brief. Moreover, Appellants failed to present any evidence showing how the notices were at variance with the amounts they owed on the mortgage. **See Monroe**, 966 A.2d at 1143 (stating if an Act 91 notice is determined to be defective, a mortgagor is not entitled to a presumption of prejudice).

Similarly, Peiffer's ability to provide an affidavit in support of summary judgment do not entitle Appellants to relief, as Peiffer's job title does not create a material issue of fact. Notably, as stated above, Appellants admitted that they defaulted on the mortgage and VC possessed the note and owned

the mortgage. Regardless, Peiffer explicitly stated that he was a servicing agent for VC, and that he was responsible for handling the files and litigation documents in this case. *See* Affidavit, 8/19/21, at ¶¶ 1, 2. Accordingly, Appellants failed to sustain their burden of presenting material facts in dispute, and the trial court properly granted summary judgment in favor of VC. *See Gibson*, 102 A.3d at 465.

Next, Appellants assert that the trial court violated *Nanty-Glo* by relying on Peiffer's affidavit in granting VC's motion for summary judgment. *See* Appellants' Brief at 23-24.

"The *Nanty-Glo* rule prohibits summary judgment where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." *Lineberger v. Wyeth*, 894 A.2d 141, 149 (Pa. Super. 2006) (citation, emphasis, and quotation marks omitted).

Here, Peiffer's affidavit references and attaches copies of the note, mortgage, mortgage assignments, and the Act 6 and Act 91 notices. Therefore, this was not a mere "testimonial affidavit" barred by *Nanty-Glo*, but instead constitutes documentary evidence supported by the affidavit. *See Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 427-28 (Pa. Super. 2016) (holding that *Nanty-Glo* is not implicated when an

affidavit is supported by documentary evidence). Moreover, *Nanty-Glo* is not implicated when an affidavit in a mortgage foreclosure action is also supported by the defendants' admissions. *See Sherman v. Franklin Regional Med. Ctr.*, 660 A.2d 1370, 1372 (Pa. Super. 1995) ("An exception to [the *Nanty-Glo*] rule exists … where the moving party supports the motion by using admissions of the opposing party"). In light of the foregoing, the *Nanty-Glo* rule was not implicated, and Appellants' claim is without merit.

In their final claim, Appellants contend that the trial court improperly granted summary judgment without providing reasonable time to the parties to complete discovery. *See* Appellants' Brief at 15-17. Appellants highlight that VC filed its motion for summary judgment approximately two months after service of the complaint, which prevented Appellants from conducting discovery in support of their defenses. *See id.* at 16. According to Appellants, further discovery would reveal genuine issues of material fact relating to the assignment of the mortgage and loan documents, a grant of waiver, extension, or forbearance by VC, promissory estoppel, and the failure to provide Act 6 and 91 notices to Appellants. *See id.* Appellants claim that the trial court erred in finding that no additional discovery was required. *See id.* at 17.

"[P]arties must be given reasonable time to complete discovery before a trial court entertains any motion for summary judgment[.]" *Anthony Biddle Contractors, Inc. v. Preet Allied Am. St., LP*, 28 A.3d 916, 928

(Pa. Super. 2011) (citation and emphasis omitted). However, "[s]ummary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact. Thus, the question is whether additional discovery would have aided in the establishment of any material fact." *Manzetti v. Mercy Hosp. of Pittsburgh*, 776 A.2d 938, 950-51 (Pa. 2001) (citation omitted).

> The trial court addressed Appellants' claim as follows:
>
> Here, despite the fact that Appellants bore the burden of proving that additional discovery would have aided [them], Appellants failed to include any substantive argument as to why additional discovery was necessary prior to the entry of summary judgment, apart from merely reiterating the existence of the above-mentioned issues of material fact. Appellants offered no legal or factual support, nor do they specify any outstanding discovery requests of [their] own. Moreover, Appellants do not specify what, if any, discovery requests they would have filed if given more time that would be essential to justify their opposition to the summary judgment motion. For these reasons, Appellants are not entitled to relief on this issue.

Trial Court Opinion, 3/25/22, at 10-11 (citation, quotation marks, brackets and some capitalization omitted).

We agree with the sound reasoning of the trial court and affirm on this basis. Additionally, as noted above, Appellants should have specific knowledge of the terms and conditions of the mortgage and have failed to articulate any evidence to support their purported defenses. *See Pautenis*, 118 A.3d at 396. Therefore, their final claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023